## MACKINAC TRANSPORTATION CO. v. TOWNSHIP OF MACKINAW.

TAXATION—SPECIFIC TAX—VESSELS AND BOATS—NAVIGATION.

The specific tax on steam vessels created by Act No. 70, Pub. Acts 1911, whereby owners of such vessels employed on the Great Lakes were exempted from general taxation, affects only taxes of 1912 and subsequent years; so that one having paid the township tax for 1911 under protest to release property seized and claiming to have complied with the provisions of said statute, by paying to the State treasurer the statutory tonnage tax, cannot recover the enforced payment in an action against the township.

Error to Cheboygan; Shepherd, J. Submitted April 10, 1913. (Docket No. 37.) Decided May 28, 1913.

Assumpsit by the Mackinac Transportation Company against the township of Mackinaw for taxes paid under protest. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*James H. Campbell,* for appellant.

*Victor D. Sprague* and *Homer H. Quay,* for appellee.

OSTRANDER, J.  Act No. 70, Public Acts of 1911, is entitled "An act regulating the taxation of steam vessels, steam boats and other steam water craft of registered tonnage within the State of Michigan," was approved April 13, 1911, and became effective 90 days from May 2, 1911.  The act provides that if the owner of any such craft, engaged in carrying passengers or passengers and freight, licensed and hailing from a port in this State, and employed in the navigation of international waters or the waters of the Great Lakes, shall pay annually into the State treasury a sum equal to 20 cents per net ton on the registered tonnage thereof and a sum equal to 10 cents per net ton if carrying freight only, the payment shall be received in lieu of all taxes, and the boat shall be exempt from all further taxation.  Section 2 of the act reads:

"The owner of any steam vessel, steam barge or steam boat hailing from any port of this State and employed in the navigation of international waters or waters of the Great Lakes, to comply with the terms of this act, shall annually, on or before the first day of December, file with the auditor general a verified statement in writing containing the name, port of hail, tonnage and name of owner of such steam vessel, steam barge or steam boat, and shall thereupon pay into the State treasury a sum equal to ten cents for freighter or twenty cents for passenger boat per net ton on the registered tonnage of said vessel, and the said treasurer shall thereupon issue his receipt therefor."

Plaintiff is a domestic corporation, having its principal office in Mackinaw City, in the township of Mackinaw, in Cheboygan county, and in the year 1911 was owner of steam vessels, hailing from the port of Mackinaw City, engaged in carrying freight and pas-

sengers between said city and St. Ignace upon the waters of the Great Lakes. Its vessels were registered and enrolled and duly licensed under Federal laws to carry freight and passengers.

Plaintiff's vessels were in the home port on the second Monday in April, 1911, and the supervisor of the township placed them on the assessment roll as the property of the plaintiff at a valuation of $275,000. Such proceedings were thereafter taken that on June 13, 1911, the board of review certified to the completion and approval of the said assessment roll, and on November 20, 1911, the supervisor signed the completed tax roll, delivering it, with his warrant, to the township treasurer December 1, 1911. Before the tax roll was so signed, and on November 18, 1911, plaintiff paid into the State treasury the sum of 20 cents per net ton on the registered tonnage of its said vessels, having on the same day filed with the auditor general the verified statement provided for in section 2 of the act. The State treasurer issued his receipt. Thereafter, in April, 1912, the township treasurer seized property of the plaintiff in proceedings to collect the taxes spread upon the tax roll of the township, and the plaintiff paid the same under protest. This is a suit to recover the taxes so paid under protest. In the trial court a verdict for defendant was directed.

Upon the hearing, and in the main briefs of counsel, the only question presented in this court was whether the statute affected the taxes for the year 1911. Thereafter the court requested briefs "upon the force and effect of Act No. 70, Public Acts of 1911," and, especially upon the point whether it was an act imposing a tax within the meaning of the Constitution of the State, art. 10, §§ 3, 4, 5, 6. The briefs asked for have been filed and have been exchanged by counsel. In the supplemental brief filed on behalf of defendant, it is contended, among other things, that the

act in question lays a duty on tonnage within the meaning of subdivision 3 of section 10 of article 1 of the Federal Constitution, and is therefore invalid, no permission of Congress so to do appearing, and that the law is invalid because it does not distinctly state the tax and the objects to which it is to be applied in conformity with section 6 of article 10 of the State Constitution. Counsel are agreed that the act imposes a tax within the meaning of sections 3, 4, 5 and 6 of article 10.

The trial court interpreted the law as expressing legislative intention to exempt, at the election of the owner, such property from general taxation for the year 1912, and not earlier. As we think the court properly interpreted the law, a conclusion which requires the affirmance of the judgment, we express no opinion concerning the validity of the legislation. The interpretation of the act contended for by the plaintiff will result each year in great confusion. The general assessment of property for taxation is made in the spring of each year, and thereafter, until the month of December, various steps are taken in the proceeding to levy taxes. If plaintiff's contention should prevail, it would occur that after the proceeding to levy was completed, and on the day when, under the general law, personal taxes became a lien upon the property taxed, the owner could pay, in lieu thereof, the specific tax. As a result, a township might find itself seriously embarrassed, the revenue it had provided for diminished, without diminution of its proportionate burden of State and county levies, imposed upon the basis of its equalized valuation. If, on the other hand, the election and payment required to be made by the owner on or before December 1st in each year affects the taxes of the succeeding, and not of the current, year, local officers will act accordingly. The property will be, according to the act, exempt from "all further taxation, either State, county, or municipal," and be

omitted, not considered, in the succeeding year in the proceeding to levy and collect taxes under the general law. The language of the act reasonably supports the interpretation placed thereon by the trial court, and, this being so, we shall assume that the legislature did not intend, as an effect of the act, an annual, expensive, and troublesome predicament in each township affected by it.

The judgment is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.